AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

FILED
UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

16 APR -1 PM 3: 59

CLERK-ALBUQUERQUE

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

#5 Camino Pequeno, Santa Fe, New Mexico

)
)
) Case No. 16 MR 249
)
)
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

located in the _____ District of _____ New Mexico _____, there is now concealed *(identify the person or describe the property to be seized)*:

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18 United States Code, Section 1343 | Fraud by wire, radio or television |

The application is based on these facts:

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Kathleen M. Magnafici, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 4/1/2016

City and state: Albuquerque, NM

*Judge's signature*

Laura Fashing, United States Magistrate Judge
*Printed name and title*

**SEALED**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

<u>AFFIDAVIT IN SUPPORT APPLICATION FOR SEARCH WARRANT</u>

I, Kathleen M. Magnafici, being duly sworn, depose and say as follows:

INTRODUCTION AND AGENT BACKGROUND

1.  I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the premises of Margie Hoyle, #5 Camino Pequeno, Santa Fe, New Mexico and further described in Attachment A, for those items described in Attachment B. I believe that there is probable cause that the items listed in Attachment B are present at the location listed and were used to commit a crime and constitute evidence of violations of federal law, namely, Title 18 U.S.C. § 1343, wire fraud.

2.  I am a Special Agent of the Federal Bureau of Investigation (FBI) currently assigned to the Santa Fe Resident Agency of the Albuquerque Division. I have investigative responsibilities including white collar crime, violent crime and public corruption. I am also a member of the FBI Art Crime Team, and am responsible for addressing art and cultural property crime cases in a region covering the Albuquerque Division which includes Santa Fe, New Mexico. The information set forth in this Affidavit has been derived from my own investigation, or communicated to me by other sworn law enforcement officers, or from other reliable sources. I have set forth only the facts that I believe are necessary to demonstrate probable cause for the issuance of the requested search warrant.

1

3. Based on my knowledge and experience as a member of the FBI Art Crime Team, I am aware that legitimate art dealers and galleries require documentation of "provenance," which is the documented and detailed origin and history of ownership of a piece of art. The value of any given piece of art is often dependent on its provenance, and possession of detailed documentation of the provenance is a necessary prerequisite to the sale of any valuable piece of art.

4. I am also aware that those who deal in stolen or fraudulent art attempt to make art appear legitimate in order to sell it to legitimate dealers or collectors by creating false provenance. The creation of false, but credible provenance for a fraudulent or stolen piece increases the value and marketability of that piece well beyond the purely artistic aesthetic value of the piece. This documentation of provenance, both false and legitimate, can take many forms, including e-mails, web pages, digital and film photographs printed handwritten certificates and other written or electronic reports, letters, notes, memos or documents.

5. I am also aware that art dealers and galleries typically keep documentation of provenance at the place of business where the art is marketed, bought, sold, or stored, so that the documentation is immediately available to prospective buyers. I am also aware that art dealers typically maintain copies of invoices, shipping records, and other business records related to the sale and purchase of art either in written or electronic form.

## PROBABLE CAUSE

6. Saher Saman is an art dealer in Santa Fe, New Mexico, who has operated various galleries in Santa Fe, New Mexico, and elsewhere. Saman previously operated as Marji Gallery, a New Mexico limited liability company (LCC) specializing in the sale of contemporary art. Saman's partner was Margie Hoyle. Hoyle was listed as the organizer of Marji Gallery on the

corporate documents associated with the LCC formation. Marji Gallery is now defunct, but operated at various locations throughout Santa Fe, New Mexico. Saman has also operated Read Contemporary Gallery at 805 Early Street, Santa Fe, New Mexico and in Dallas, Texas. Additionally, Saman was affiliated with ROR Contemporary Gallery. Saman filed for bankruptcy in 2014.

## JEFF LONG AND DEBORAH DONNER

7.     From December 19, 2011 to July 12, 2013, Deborah Donner, a resident of Colorado, purchased several paintings from Marji Gallery. Some of these paintings were by a San Francisco artist named Jeff Long. Donner purchased the following artworks by Long for a total of $135,000:

| TITLE | PRICE | DATE | METHOD OF PAYMENT |
|---|---|---|---|
| "Regeneration" | $52,000 | 12/19/2011<br><br>1/20/2012 | $25,000 check<br><br>$27,000 wire transfer |
| "Admonition" | $24,000 | 6/5/2012 | Wire transfer |
| "Yolo" | $24,000 | 7/6/2012 | Wire transfer |
| "Genet & Cocteau" | $25,000 | 9/13/2012 | Wire transfer |
| "Kelseyville" | $10,000 | 9/13/2012 | Wire transfer |

8.     Each of the above wire transfers were transmitted from Donner's bank account at UMB Bank Colorado to Century Bank in New Mexico. The beneficiary of the Century Bank account was Marji Gallery, LLC. The $25,000 check written by Donner on December 19, 2011, was made payable to Margie Hoyle. According to Donner, the handwritten invoices for the above-mentioned purchases were prepared by Hoyle.

3

9. On August 29, 2014 and thereafter, your Affiant interviewed Deborah Donner. Donner advised that she had purchased a painting, "Roseveille Salmon," from Marji Gallery. Saman came to her home in Colorado in or around December 2011 to January 2012 to deliver the "Roseville Salmon" Painting. At that time, Saman brought with him another painting by San Francisco artist Jeff Long entitled, "Regeneration," and inquired if Donner was interested in purchasing it. Donner decided to purchase "Regeneration" from Saman. Saman advised Donner that "Regeneration" was needed for a Jeff Long artist exhibit and that he would return it to her once the exhibition was over. Donner agreed to this. Saman left Donner's residence with "Regeneration" and Donner retained "Roseveille Salmon." Shortly thereafter, Donner made the required payments for "Regeneration" to Marji Gallery as reflected herein.

10. Over the next several months, Donner purchased additional Jeff Long paintings from Marji Gallery, which were titled "Admonition", "Yolo", "Genet & Cocteau" and "Kelseyville." These paintings were delivered to Donner's home in Colorado sometime in 2012. Saman, however, later asked Donner if he could retrieve these additional four paintings to be included in the Jeff Long exhibition. Donner agreed, and provided the four remaining Jeff Long paintings to Saman under the auspices of needing them for the exhibition. Saman told Donner that all five of the Jeff Long works purchased by her would be returned to her after the exhibition ended in approximately one to three months.

11. In January 2014, Donner learned that the paintings were in the possession of the artist, Jeff Long, with the exception of "Yolo" which was purchased by the David Brower Gallery. Thereafter, on January 21, 2014, Donner filed a police report with the Santa Fe Police Department alleging that Hoyle and Saman defrauded her. To date, Donner has not received the paintings she purchased of Jeff Long's work, nor has she received a refund of her purchases.

12. On or about June 12, 2014, Donner filed a civil complaint against Saher Saman, Margie Hoyle, and Marji Gallery, LLC. During settlement negotiations, Donner received a $2500 check drawn off of Margie Hoyle's account. The check bounced and a judgment for the entire amount of $135,000 was entered against Saher Saman and Margie Hoyle. Donner has not received the paintings or a refund of her money.

13. On or about July 7, 2015, an FBI agent interviewed Jeff Long in San Francisco, California. Long advised that he put his art work on consignment with Marji Gallery in 2011 or 2012 and was to receive 50% of the sales proceeds of each panting. In 2012, Long demanded the return of his paintings from Marji Gallery because Saman had provided him with checks that bounced for the sale of some of Long's prints. Long's brother traveled to Santa Fe to retrieve Long's artwork from Marji Gallery in Santa Fe, New Mexico, and returned them to Long on November 29, 2012. Long confirmed that he was in possession of "Regeneration", "Admonition", "Kelseyville", and "Genet & Cocteau." Long learned in 2013 or 2014 that Deborah Donner had purchased these four pieces along with "Yolo" from Marji Gallery. Long never received payment for their sale.

## ABORIGINAL ART

14. Beginning on March 16, 2012, and continuing to February 5, 2013, Tom Colrain provided approximately 32 paintings to be placed on consignment with Marji Gallery in Santa Fe, New Mexico. Colrain is the owner of Australian & Oceanic Art, an art gallery located in Port Douglas, Queensland, Australia. Colrain shipped the artwork in four installments via DHL Express from Australia to Santa Fe, New Mexico. Colrain represents several Aboriginal artists in Australia. Zev Guber, an art collector who was residing in Santa Fe, New Mexico, at the time, visited Colrain's gallery in Australia. Guber believed Colrain's art could be marketed in the

5

United States and sold by Marji Gallery and/or Read Contemporary. (Guber eventually became an investor with Saman in Read Contemporary; according to Guber, he invested approximately $93,000 which he has not recovered from Saman.) Colrain agreed to provide these paintings to Marji Gallery and Read Gallery on consignment. Under this agreement, Colrain was to receive 50% of the sales proceeds, while Guber and Saman split the remaining 50%. These paintings are hereinafter referred to as the "Aboriginal Art."

15. On December 3, 2013, Colrain asked Saman via email for a visual update of his paintings and a status of works. Saman responded via email that he could not provide this due to medical issues or travel. Thereafter, Colrain sent Saman approximately nine more email communications in which Colrain requested the return of his works. Saman responded to Colrain via email on at least seven different occasions that he was either working on getting them returned, collecting them from other places or that they were waiting to be shipped. In addition, in 2014, Colrain's wife, Kerry Colrain, sent an email to Hoyle requesting a status of the Aboriginal Artwork. On June 6, 2014, Hoyle emailed Kerry Colrain and told her that Hoyle was "working on it."

16. With respect to monies paid to Colrain, Colrain provided receipts to your Affiant indicating that Saman told Colrain that he sold three of the Aboriginal Art paintings. As part of the consignment agreement, Saman paid Colrain a total of approximately $18,176.47. (These three works are not the subject of the affidavit and are not included in Attachment B.) As of March 14, 2016, Colrain had not received the return of his paintings or any additional funds from Saman or Hoyle.

17. In addition to the Jeff Long paintings, in 2013, Donner purchased five pieces of the Aboriginal Art from Saman and Hoyle: "Sand Hills at Mina Mina", "Blood Brothers",

6

"Awelye", "My Country", and "Salt at Mina Mina". Saman and Hoyle discussed entering into a business partnership with Donner. Ultimately, Donner declined to enter into a partnership with Saman and Hoyle, but agreed to place these five Aboriginal Artwork paintings on consignment with Saman.

18. Donner requested the return of these paintings, however, was initially unsuccessful. Saman told Donner that the paintings were in Dallas, Texas. Eventually Donner retrieved five Aboriginal Artwork paintings from Saman from a storage facility in Dallas, Texas. Donner, however, advised your Affiant that she was unsure if the paintings she purchased match those that she retrieved the storage facility. She based this conclusion on the fact that some of the art codes and serial numbers on the back of the paintings have been crossed out or were changed. For this reason, your Affiant has included the Aboriginal Artwork purchased by Donner that matched the itemization provided by Colrain as property to be seized in Attachment B, as there is probable cause to believe that the paintings in Donner's possession are not those originally purchased by her.

19. Guber provided three computer-generated invoices from Marji Gallery dated February 11, 2013, to your Affiant reflecting Saman's sale of Sand Hills at Mina Mina, Blood Brothers, and Awelye to Donner. Despite demands from Guber and Colrain, Saman never provided either Guber or Colrain with a portion of these sales.

20. On March 28, 2016, your Affiant conducted an interview of Philip Gudwin. Gudwin was the manager of Early Street, LLC, a New Mexico Limited Liability Company. On or about May 15, 2014, Gudwin entered into a lease agreement with Saher Saman d/b/a Read Contemporary to lease Building F, Suite 122 at 805 Early Street, Santa Fe, New Mexico. Approximately two months later when Saman did not make the rent payments, Gudwin issued

7

him a letter of default and evicted Saman from the property. Gudwin retained eleven pieces of art that were housed in the space.

21. Colrain provided your Affiant with a list of the Aboriginal Artwork, photos, and descriptions of the pieces which Saman has not been returned to him. Gudwin provided a list and photographs of eleven pieces of art that he seized from Saman. Your Affiant has compared Gudwin's list to the itemization of artwork provided by Colrain. Based on this, your Affiant has identified the following ten Aboriginal Artwork pieces belonging to Colrain as being in Gudwin's possession:

| | TITLE | ARTIST |
|---|---|---|
| 1. | My Country | Anna Price Petyarre |
| 2. | Bush Yam Leaves | Jeannie Petyarre |
| 3. | Awelye and Bush Melon | Betty Mbitjana |
| 4. | Sand Marks | Rosella Namok |
| 5. | Stinging Rain | Rosella Namok |
| 6. | Marks in the Sand | Rosella Namok |
| 7. | Tingari | Ronnie Tjamitjinpa |
| 8. | Today Life...Confused Way | Samantha Hobson |
| 9. | Womens Body Paint | Narpula Scobie |
| 10. | CAT NO. NN0007 | Ningura Napurrula |

22. The itemization of Aboriginal Artwork reflected in Attachment B is comprised of the remaining paintings identified by Colrain as ones provided to Saman that have not been returned to Colrain. Attachment B does not include the Aboriginal Artwork believed to be in Gudwin's possession.

## FREDERICK LOUIS

23. On October 9, 2013, Louis purchased a work titled, "Man2" by Artist Ahmad Anwar Zakii for $12,000 from Read Contemporary in Dallas, Texas which he viewed on Read Contemporary's website. According to the invoice, Louis was to pay $6000 up front and the remaining $6000 in two installments of $3000 on January 1, 2014 and April 1, 2014. He was directed to wire the funds to Saher Saman/Marji Gallery 552 E. Coronado, Santa Fe, NM 87501 (an address known to be a former residence of Saher Saman) with the destination being Century Bank Santa Fe. Louis wired Marji Gallery a $6000 payment on October 10, 2013 as directed.

24. According to Louis, who was interviewed by the FBI on August 22, 2014, Saman asked Louis to send the balance immediately because he was in a lawsuit with a Los Angeles gallery owner, Susan Baik, and he could not send the art until she was paid. Louis sent a wire transfer in the same account for the balance on December 12, 2013. In an email, dated January 9, 2014, Saman claimed that he wired funds to Baik's account and Louis should have the painting soon. When Louis still did not receive the artwork by January 27, 2014, he emailed Saman asking for a refund. Louis has not received the painting or a refund of his money.

25. Susan Baik was interviewed by the FBI on April 16, 2015 and asked to provide information about her involvement in this transaction. She advised that she is an art gallery owner based in Los Angeles, California who had collaborated with Saman at art exhibitions and the Houston Art Fair. The Zakii piece that Louis purchased was featured in the Houston Art Fair by Baik. Afterwards, Saman asked to keep the piece and indicated he had a prospective buyer for it, which she later discovered was Louis Federick. Once Baik realized that Saman was no longer operating out of the Read Contemporary space and that the Zakii piece was in public storage, she asked Saman for its return. She finally obtained it in October of 2013.

9

26.     Baik received an email message from Margie Hoyle indicating that the piece had been sold to Frederick which described the terms of the installment agreement. Saman requested its return. Because Saman owed Baik approximately $20,000 as part of a settlement to address unpaid commissions, shipping fees and other business expenses, Baik refused. Baik emailed Frederick to advise him that she had the piece and requested that Frederick pay her the balance for the Zakii piece. Frederick continued to work with Saman, who advised his money had been provided to Baik and the artwork would be released shortly. When interviewed on March 14, 2016, Saman claimed that Hoyle was the one who transmitted the funds by wire to Baik.

27.     Frederick was provided with a copy of wire transfers reflecting that $24,000 was transferred to Baik's account to address the settlement which include his funds. Frederick has not received either the painting or a refund of his money.

## GREG ROSE

28.     On March 28, 2016, your affiant interviewed Greg Rose, an artist in Los Angeles, California. Rose advised that Saman is in possession of two of his paintings, "Rikka 1" and "Iki2". Through Susan Baik's Los Angeles, Gallery, Rose allowed three paintings to be displayed at Read Contemporary in 2013. Upon the conclusion of the show, Rose learned through Baik that two of the paintings never made it back to Los Angeles. Rose emailed Saman beginning in November of 2013 and asked for the return of the works. His requests continued through February 2016, with responses from Saman indicating that he was out of town, or arranging for a pickup and delivery of them or he was trying to sell them to a client. Saman offered to have Rose come get them at his own expense. Rose provided your Affiant with copies of his email correspondence with Saman at ROR Contemporary and photos of the two art works that Saman possesses. To date, Rose has not received the two paintings from Saman.

## SAHER SAMAN

29. On March 17, 2016, your affiant and another Special Agent interviewed Saher Saman at his residence, #4 Camino Pequeno, and Santa Fe, New Mexico, 87501. Saman admitted that he still possessed five of the Aboriginal pieces from Colrain, but he did not specify which five pieces they were. Saman also admitted to possessing art that belongs to others who have requested its return. Saman admitted that some of these items are being housed next door at Hoyle's residence. (Your Affiant has confirmed that Hoyle resides at #5 Camino Pequeno, Santa Fe, New Mexico 87501). Saman also confirmed that Hoyle was his business partner.

30. During the interview of Saman, he was questioned about a painting hanging on the wall in the room where the interview took place which appeared to be an Aboriginal piece. He noted that it was by the artist, George Tjungurrayi. Your Affiant knows this to be an artist of some of the pieces that Tom Colrain shipped to Marji Gallery for consignment.

31. In addition to the Aboriginal Art, your Affiant noticed another piece of art displayed on the wall of Saman's residence. It appears to be one of the two pieces that Rose owns and which was depicted in the emails that he sent your Affiant on March 28, 2016. It is believed to be "Iki2."

32. During the interview at his residence, your Affiant noticed that Saman had marketing material on display on the coffee table and appeared to be selling artwork from his residence.

## MARGIE HOYLE

33. On March 28, 2016, your Affiant attempted to interview Hoyle at her residence of #5 Camino Pequeno, Santa Fe, New Mexico. Hoyle confirmed that it was her residence and that she occupied the entire structure.

## CONCLUSION

34. Based on the foregoing information, Affiant submits that there is probable cause to believe that Margie Hoyle, along with Saher Saman, d.b.a. as Marji Gallery, and the related entities mentioned herein, have devised a scheme or artifice to defraud in order to obtain money or property by false or fraudulent pretenses or representations and transmits or causes to be transmitted by means of wire communication in interstate or foreign commerce any writings for the purpose of executing such scheme or artifice in violation of 18 U.S.C. § 1343.

35. I submit there is probable cause to believe the items included in Attachment B are located at Hoyle's residence, #5 Camino Pequeno, Santa Fe, New Mexico 87501 to include any structures, outbuildings, sheds, garages, and vehicles within the cartilage on or adjacent to Saman's residence, and Saman's person. I believe there is probable cause that the items listed in Attachment B are present at the locations listed and were used to commit a crime, and constitute evidence of violations of Federal law, namely 18 U.S.C. § 1343, wire fraud.

I swear this information is true to the best of my knowledge and belief.

Respectfully submitted,

Kathleen M. Magnafici
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me this 1st day of April, 2016.

LAURA FASHING
HONORABLE UNITED STATES MAGISTRATE JUDGE

12